**TELETECH CUSTOMER CARE MANAGEMENT (CALIFORNIA), INC., formerly known as Teletech Telecommunications, Incorporated, a California Corporation, Plaintiff,**

v.

**TELE–TECH COMPANY, INC., a Kentucky Corporation; and Does 1 through 100, Defendants.**

**No. 96–8377 MRP (RCX).**

United States District Court, C.D. California.

May 9, 1997.

---

**1408**

Jeffrey N. Mausner, Berman, Blanchard, Mausner & Resser, Los Angeles, CA, for Teletech Telecommunications Incorporated.

Michael D. Harris, Oppenheimer, Poms, Smith, Los Angeles, CA, for Tele–Tech Company Inc.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

PFAELZER, District Judge.

On April 21, 1997, Plaintiff's Motion for Preliminary Injunction came before the

Court for hearing. Jeffrey N. Mausner of Berman, Blanchard, Mausner & Resser appeared for Plaintiff; Michael D. Harris of Oppenheimer Poms Smith appeared for Defendant. After considering the papers filed by the parties and the arguments presented at the hearing, the Court grants Plaintiff's Motion for Preliminary Injunction and makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### I. FACTS RELATING TO THE PLAINTIFF'S BUSINESS

1. Plaintiff TeleTech Customer Care Management (California), Inc. ("TeleTech" or "Plaintiff") is the owner of the federally registered service mark TELETECH®, United States Service Mark Registration No. 1,996,-498. The Service Mark Registration is valid and current. Plaintiff has used the mark TELETECH® in commerce since 1982.

2. TeleTech Holdings, Inc. is the parent company of the Plaintiff, as well as several other entities whose names begin with "Tele-Tech": TeleTech Customer Care Management (Colorado), Inc.; TeleTech Services Corporation; TeleTech Health Services Management, Inc.; TeleTech Financial Services Management, Inc.; TeleTech Facilities Management (Postal Customer Support), Inc.; TeleTech Facilities Management (Parcel Customer Support), Inc.; TeleTech Customer Care Management (New York), Inc.; TeleTech Customer Care Management (West Virginia), Inc.; TeleTech Customer Care Management (Texas), Inc.; TeleTech International Pty Ltd.; TeleTech Limited [NZ]; TeleTech Limited [UK], as well as other corporations. TeleTech Holdings, Inc. owns 100% of the shares of all of the corporations set forth above. All of these corporations shall be referred to collectively as the TeleTech Companies. TeleTech Holdings, Inc. is a publicly traded company, whose stock is listed on the NASDAQ stock exchange.

3. Plaintiff has shown that the TeleTech Companies may be the largest provider of primarily inbound integrated telephone and Internet customer care worldwide. The main business of the TeleTech Companies is providing "customer care" for the customers of TeleTech's clients, including receiving and responding to telephone and Internet inquiries from customers of TeleTech's clients. "Customer care" provided by the TeleTech Companies includes answering questions asked by the clients' customers before a sale, providing information on new products offered by TeleTech's clients, enrolling customers in clients' programs, arranging product shipments to customers of TeleTech's clients, providing 24–hour technical and help desk support for customers of TeleTech's clients, resolving customer complaints, and conducting satisfaction surveys. The TeleTech Companies handle service calls from customers of many types of businesses, including airlines, the United States Postal Service, telephone companies, banks, computer companies, utility companies, a package delivery service, and other types of businesses. Airline reservations, tracking of packages, bank transactions, and many other customer service calls are handled by TeleTech employees.

4. It appears that the TeleTech Companies have spent hundreds of thousands of dollars promoting their services and advertising under the TELETECH® Service Mark. In 1996 alone, the TeleTech Companies appear to have spent in excess of nine hundred thousand dollars promoting their services and advertising under the TELETECH® Service Mark. The TeleTech Companies have sold millions of dollars worth of services under the TELETECH® Service Mark. As a result of these efforts, it appears that TeleTech has built up and now owns valuable goodwill symbolized by the TELETECH® Service Mark.

### II. FACTS RELATING TO THE DEFENDANT'S BUSINESS

5. Defendant Tele–Tech Company, Inc. ("Tele–Tech" or "Defendant") is a contractor providing engineering and installation services to the telecommunications industry. Defendant began using the name Tele–Tech (with a hyphen) in 1978.

6. Defendant has not registered the service mark TELE–TECH. Defendant has not been authorized or licensed by TeleTech to use the TELETECH® Service Mark

(without a hyphen). Defendant is not affiliated with or sponsored by TeleTech.

### III. FACTS RELATING TO THE DEFENDANT'S USE OF THE DOMAIN NAME "TELE-TECH.COM"

7. Defendant Tele–Tech is using Plaintiff's federally registered service mark (TEL-ETECH, without a hyphen) as an Internet domain name, "teletech.com".

8. Plaintiff has used the TELETECH® service mark for approximately fifteen years, and began using the TELETECH® service mark long before Defendant's first use of "teletech.com" (without the hyphenation which distinguishes Defendant's name from Plaintiff's TELETECH® service mark).

9. Only one entity may use the domain name "teletech.com." As a result, Defendant's use of the "teletech.com" domain name prevents Plaintiff TeleTech from using its registered service mark and company name as its domain name.

10. Plaintiff's inability to use the TELE-TECH® company name and registered service mark as its domain name is causing hardship to Plaintiff Customers and potential customers of Plaintiff are unable to locate Plaintiff's website by typing in "teletech.com" as part of the Uniform Resource Locator (URL).

11. An Internet domain name may include a hyphen.

12. Use of a hyphen would distinguish the domain name "tele-tech.com" from-the domain name "teletech.com." Domain names such as "teletech.com" are used to identify the location of servers on the Internet. Because the hyphen is an additional character in the domain name, its inclusion or omission changes the location of the server to which an inquiry is made.

13. Tele-Tech is not precluded from using its own name, "Tele–Tech," with its distinctive hyphenation, as its domain name. In fact, Tele–Tech appears to have established a second website that uses the domain name "tele-tech.com."

### IV. FACTS RELATING TO THE BALANCE OF HARDSHIP

14. Injunctive relief will probably not have great negative impact on Defendant. Defendant is free to use, and in fact already appears to be using, the domain name "tele-tech.com" (which includes the hyphenation), in a second website that Defendant maintains. In fact, it may be easier for Defendant's customers to locate Defendant's website under the domain name "tele-tech.com," since that is the way the Defendant spells its name.

15. Defendant is "attempting to inform its customers to use 'tele-tech.com' for e-mail."

16. Defendant suggests that Plaintiff's presence on the Internet is not hindered by Defendant's use of Plaintiffs name and registered service mark as its domain name, because Internet users can locate Plaintiff's website using Internet "search engines," rather than typing in Plaintiff's name as part of the URL. That method of searching the Internet appears to generate as many as 800 to 1000 matches, however. That number of locations is likely to deter web browsers from searching for Plaintiffs particular website.

17. TeleTech appears to have incurred a great deal of expense over a long period of time developing recognition of its TELE-TECH® mark, and users of the Internet who have become familiar with that mark will probably assume that TeleTech's website will be found at "teletech.com."

18. The balance of hardships tips sharply in Plaintiff's favor.

### V. FACTS RELATING TO THE LIKELIHOOD OF CONFUSION

19. Consumers and others are likely to be confused by the Defendant's unauthorized use of "teletech.com" as its domain name, because persons who attempt to located the Plaintiff's website by typing in "telech.com" as the domain name will instead be connected to the Defendant's website. While reading the Defendant's website may dispel this confusion, there is at least the initial confusion as to the source of the website that the user has accessed.

20. Plaintiff has made an adequate showing that the TELETECH® mark is strong.

21. Since Defendant's "teletech.com" domain name does not include a hyphen, it is identical to Plaintiff's registered service mark and company name.

22. Defendant continued to use Plaintiff's registered mark as its domain name even after Plaintiff demanded that Defendant stop doing so.

## VI. FACTS RELATING TO DILUTION

23. The TELETECH® mark is most likely very well recognized within the teleservicing industry, because TeleTech appears to be a large provider of integrated telephone and Internet customer care worldwide and because of the extensive promotion and advertising that TeleTech has apparently undertaken.

24. The TELETECH® mark has been continuously used in commerce by TeleTech since 1982. The mark is registered on the Principal Register.

25. The TELETECH® mark appears to be famous.

## VII. FACTS RELATING TO THE FILING OF THIS MOTION

26. Plaintiff first wrote to Defendant in October 1996, demanding that Defendant cease use of the "teletech.com" domain name.

27. Plaintiff filed this lawsuit in December 1996.

28. Plaintiff moved for a preliminary injunction in February 1997.

To the extent that any Conclusions of Law set forth below are deemed to be Findings of Fact, they are incorporated herein.

## CONCLUSIONS OF LAW

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction of this matter pursuant to 15 U.S.C. §§ 1121 and 1125(a), and 28 U.S.C. §§ 1331, 1338(a) and 1338(b) and pursuant to the principles of supplemental jurisdiction.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## II. THE STANDARD FOR GRANTING A PRELIMINARY INJUNCTION.

3. To obtain a preliminary injunction, a party must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable injury if the requested relief is not granted, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir.1987). The Ninth Circuit explained the balance of hardships test as follows: "The critical element in determining the test to be applied is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988) (quoting *Aguirre v. Chula Vista Sanitary Serv.*, 542 F.2d 779 (9th Cir.1976)). As explained below, because the balance of hardships tips decidedly toward Plaintiff and because it is likely that Plaintiff will be successful on the merits, TeleTech is entitled to the requested injunction on both grounds.

## III. THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN PLAINTIFF'S FAVOR AND DEFENDANT'S USE OF THE TELETECH® SERVICE MARK AS ITS DOMAIN NAME RAISES SERIOUS QUESTIONS GOING TO THE MERITS.

### A. The Balance of Hardships Tips Sharply in Favor of TeleTech.

4. Only one entity can have the Internet domain name "teletech.com." As stated by the court in *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227, 1230 (N.D.Ill.1996), "[t]he 'fully qualified domain name' may not be repeated in the Internet." "A given domain name, the exact alphanumeric combination in the same network and using the same suffix, can only be registered to one entity." *Id.* at 1232. *See also Panavision Int'l, L.P.v. Toeppen*, 945 F.Supp. 1296, 1302 (C.D.Cal. 1996) ("[T]he current organization of the Internet permits only one use of a domain name ... [O]nly one business can operate on

the Internet with the domain name 'acme. com'").

5. In this case, the balance of hardships tips sharply in Plaintiff's favor and in favor of the issuance of an injunction. Defendant's use of the domain name "teletech.com" prevents Plaintiff from using its company name and registered service mark as its domain name, while Defendant is free to use, and has in fact started using, the domain name "tele-tech.com" as an alternative domain name.

### B. Defendant's Use of the TELE-TECH® Service Mark as Its Domain Name Raises Serious Questions Going to the Merits of this Action.

■ 6. In *Intermatic v. Toeppen,* the court considered a similar situation. The defendant Toeppen had reserved "intermatic.com" as a domain name; INTERMATIC® was the name and registered trademark of the plaintiff. The court noted that "[t]he practical effect of Toeppen's conduct is to enjoin Intermatic from using its trademark as its domain name on the Internet." *Intermatic,* 947 F.Supp. at 1234. The court enjoined Toeppen from using the domain name INTERMATIC, from taking any action to prevent Intermatic from obtaining the Internet domain name "intermatic.com," and from asserting any further interest in the domain name "intermatic.com." *See also Panavision,* 945 F.Supp. at 1296.

7. As in *Intermatic* and *Panavision,* Defendant here has taken TeleTech's properly registered TELETECH® service mark and adopted it as its domain name, thereby preventing TeleTech from using its registered service mark, and the name by which it is generally known, as its domain name. Defendant's use of Plaintiff's exact name and registered service mark, with the omission of the hyphenation which is contained in Defendant's name and which distinguishes Defendant's Tele–Tech name from Plaintiff's Tele-Tech name, at a minimum, raises serious questions which go to the merits of Tele-Tech's claim. Since the balance of hardships tips so sharply in TeleTech's favor, the Court grants the preliminary injunction.

## IV. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS.

### A. Irreparable Injury Is Presumed If Plaintiff Is Able to Establish a Likelihood of Success on the Merits.

■ 8. "[T]here is always irreparable injury when trademark infringement exists." *Dep Corporation v. Opti–Ray, Inc.,* 768 F.Supp. 710, 717 (C.D.Cal.1991) (citing *Apple Computer, Inc. v. Formula International Inc.,* 725 F.2d 521, 526 (9th Cir.1984)). *See also* 15 U.S.C. § 1116 (providing for injunction as one remedy for trademark infringement or violation of Section 43(a)); *Dr. Seuss Enter., L.P. v. Penguin Books USA, Inc.,* 924 F.Supp. 1559, 1574 (S.D.Cal.1996) ("In copyright and trademark cases, irreparable injury is presumed upon a showing of likelihood of success."), *aff'd,* 109 F.3d 1394 (9th Cir.1997). As discussed below, since TeleTech is able to establish a likelihood of success on the merits, irreparable injury is presumed.

### B. TeleTech Has Demonstrated a Likelihood of Success on the Merits of Its Dilution Claims.

■ 9. TeleTech has demonstrated a likelihood of success on the merits of its dilution claims under Section 43(c) of the Lanham Act and California Business and Professions Code § 14330. Neither of those statutes requires proof of a likelihood of confusion to impose an injunction.

10. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides:

"(c) *Remedies for dilution of famous marks.*

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to:

(A) the degree of inherent or acquired distinctiveness of the mark;

(B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;

(C) the duration and extent of advertising and publicity of the mark;

(D) the geographical extent of the trading area in which the mark is used;

(E) the channels of trade for the goods or services with which the mark is used;

(F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;

(G) the nature and extent of use of the same or similar marks by third parties; and

(H) whether the mark was registered under the Act of March 3, 1881, or: the Act of February 20, 1905, or on the principal register."

11. Section 45 of the Lanham Act, 15 U.S.C. § 1127, defines "dilution" as follows:

"The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, *regardless of the presence or absence of—*

*(1) competition between the owner of the famous mark and other parties, or*

*(2) likelihood of confusion, mistake, or deception."* (Emphasis added.)

12. TeleTech has demonstrated that its mark is probably famous under this statute. The evidence submitted by the Plaintiff strongly suggests that the TeleTech Companies are the largest provider of integrated telephone and Internet customer care worldwide. The TeleTech Companies appear to have spent hundreds of thousands of dollars promoting their services and advertising under the TELETECH® Service Mark. The TeleTech Companies seem to have sold hundreds of millions of dollars worth of services under the TELETECH® Service Mark. TeleTech Holdings, Inc. is a publicly traded company which is listed on the NASDAQ stock exchange. The TELETECH® mark is probably very well recognized and famous within the teleservicing industry, because

TeleTech is probably the largest provider of integrated telephone and Internet customer care Worldwide and because of the extensive promotion and advertising that TeleTech appears to have undertaken. The TELETECH® mark has been continuously used in commerce by TeleTech since 1982. The mark is registered on the Principal Register.

13. TeleTech is entitled to an injunction, under Section 43(c) of the Lanham Act, even without a showing of a likelihood of confusion. See *Intermatic*, 947 F.Supp. at 1234–41, and *Panavision* in which the court found that Toeppen had diluted the plaintiffs' marks by using the plaintiffs' registered trademarks as his domain names. In those cases, Toeppen obtained the domain names in order to force the plaintiffs to pay him money to assign those names to them. This case is somewhat different, in that Defendant claims that it obtained the "teletech.com" domain name, because it was unaware that a hyphen could be used as part of a domain name. However, Defendant in this case also demanded that Plaintiff pay money to the Defendant in order for Defendant to stop using the "teletech.com" domain name. In any event, for purposes of this motion, the reason why Defendant adopted the diluting domain name is not relevant. Plaintiff is the owner of the registered mark TELETECH®, that mark is probably famous, and Defendant's use of the "teletech.com" domain name most likely dilutes Plaintiff's mark.

14. The legislative history of Section 43(c) of the Lanham Act indicates that it was intended, in part, to address the very issue raised in this case. Senator Leahy, in discussing this provision, stated:

"it is my hope that this anti-dilution statute can help stem the use of deceptive Internet addresses taken by those who are choosing marks that are associated with the products and reputations of others."

Remarks of Senator Leahy in the United States Senate, December 29, 1995, Cong. Rec. S. 19312 (104th Cong.1995). *See also Intermatic*, 947 F.Supp. at 1238.

15. Plaintiff is therefore entitled to an injunction under Section 43(c) of the Lanham Act.

16. California Business & Professions Code Section 14330 provides as follows:

"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

17. Plaintiff is entitled to an injunction under this statute as well.

### C. TeleTech Has Not Demonstrated a Likelihood of Success on the Merits of Its Service Mark Infringement and False Designation of Origin Claims.

18. Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides:

"(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided."

19. Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides:

"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

20. TeleTech is the owner of the service mark TELETECH®, which is registered on the Principal Register of the United States Patent and Trademark Office, and is valid. "A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . . . " Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b).

21. Teletech has not presented sufficient evidence to demonstrate a likelihood of confusion under the trademark laws. TeleTech thus far has only demonstrated an initial confusion on the part of web browsers using the domain name "teletech.com" but finding the Defendant's website. This brief confusion is not cognizable under the trademark laws.

### V. CONCLUSION.

22. Plaintiff TeleTech will likely be successful on the merits of its service mark infringement, Lanham Act § 43(a), unfair competition, federal dilution, and state dilution claims; that irreparable injury will result to Plaintiff in the absence of the requested Order; and that the balance of hardships tips sharply in Plaintiff's favor.

23. Network Solutions, Inc. (NSI), the organization that registers Internet domain names in the top level domain ".com," has deposited complete control and authority over the disposition and use of the "tele-tech.com" domain name to this Court.

To the extent that any Findings of Fact are deemed Conclusions of Law, they are incorporated herein.