# CIRCUIT COURT OF FAIRFAX COUNTY

Umbro International, Inc.

v.

3263851 Canada, Inc.,
and Network Solutions, Inc.

February 3, 1999

Case No. (Law) 174388

BY JUDGE M. LANGHORNE KEITH

In this case of apparent first impression, Umbro International, Inc., the judgment creditor, seeks to garnish so-called domain name registrations that were registered by 3263851 Canada, Inc., the Judgment Debtor, with the garnishee, Network Solutions, Inc. ("NSI"). In response to Umbro's attempted garnishment, NSI filed an answer denying that it held any property of 3263851 Canada, Inc., that was subject to garnishment. Umbro then filed a motion seeking to require NSI to show cause why it had not deposited control of the domain name registrations into the registry of the Court for their judicial sale. NSI opposed the Motion and a hearing was held on December 18, 1998. The Court took the case under advisement and, having further reviewed the briefs and arguments of counsel, rules that domain names are subject to garnishment for the reasons set forth below.

## I. *Background*

Umbro is an internationally known manufacturer of soccer clothing and equipment that, over ten years ago, registered the UMBRO name as a trademark. The Judgment Debtor is a Canadian corporation that has registered domain names with NSI.

Internet computers use a numeric addressing system to locate other computers on the Internet. This numeric addressing system requires that each

140

computer connected to the Internet have its own numeric address called an Internet Protocol ("IP") number. An IP number is a set of four numbers each separated by a period (e.g., 198.41.0.108). Since people remember names better than numbers but network computers must use numbers, an intermediary system called the Domain Name System translates the web addresses used by people into the IP numbers used by the network. Web addresses always contain two or more components separated by periods, called in computerese "dots." The last part of a web address (the letters at the far right) is called the "top-level domain." To the left of the top-level domain is what is called the "second-level domain." In *umbro.com*, "umbro" represents a second-level domain within the top-level domain of ".com." See the Network Solutions, Inc., website *Search & Site Index* for more detailed information concerning web addresses and domain names (visited on February 1, 1999) <http://www.networksolutions.com/SEARCH/>. *See also Intermatic, Inc. v. Toeppen*, 947 F. Supp. 1227, 1230-33 (N.D. Ill. 1996). Network Solutions, Inc., has an exclusive contract with the federal government to register the popular Internet top-level domains of .com, .edu, .net, and .org. Jeri Clausing, *Network Solutions Joins Internet High-Fliers*, N.Y. Times, December 22, 1998.

Most of the Judgment Debtor's registered domain names indicate that the Judgment Debtor distributes pornography over the Internet. The Judgment Debtor's web sites include sites with names such as "picsofchics.com," "sexxx.com," "pornplaza.com," and "slutpix.com." Affidavit of David M. Graves, Director, Business Affairs, Network Solutions, Inc. These domain names are associated with web sites and are not just registered to reserve the names. (Hearing Transcript, December 18, 1998, at 25.)

But along with its salacious Internet addresses, the Judgment Debtor also registered the domain name "umbro.com." In August of 1997, the Judgment Debtor faxed a demand letter to Umbro stating that it would transfer the umbro.com domain name to Umbro if Umbro would agree to pay it $50,000.00, pay the same amount to an Internet charity, and provide the owner of the Judgment Debtor, one James Tombas, a free, unlimited, lifetime supply of Umbro products. Understandably, Umbro refers to the Judgment Debtor as a "classic domain name pirate."

People such as the Judgment Debtor are also commonly referred to as "cyber squatters." *Intermatic, Inc.*, 947 F. Supp. at 1233. A cyber squatter attempts to profit from reserving and later reselling or licensing domain names back to the companies that spent millions of dollars developing the goodwill of their trademarks. Sometimes these sales involve "huge" amounts of money.

*Id.* at 1233-34. *See,* Gary W. Hamilton, *Trademarks on the Internet: Confusion, Collusion or Dilution?,* 4 Tex. Intell. Prop. J. 1 (1995) <http://www.utexas.edu/law/journals/tiplj>.

It also sued the Judgment Debtor for trademark infringement and obtained a default judgment against the Judgment Debtor in the United States District Court for the District of South Carolina, Greenville Division. The District Court judgment enjoined the Judgment Debtor from any use of the word "umbro," directed that the Judgment Debtor relinquish all interest in the domain name "umbro.com," and further ordered that the Judgment Debtor pay Umbro reasonable attorneys' fees and expenses in the amount of $23,489.98. *Umbro International, Inc., et al. v. 3263851 Canada, Inc., et al.,* No. 6:97-2-779-20 (D. S.C., Dec. 30, 1997). Umbro then obtained a Certification of Registration in another District from the United States District Court for the District of South Carolina and filed it in the United States District Court for the Eastern District of Virginia. That Court issued an Exemplification Certificate which Umbro filed, along with an affidavit and the required filing fee in order to obtain a writ of fieri facias from this Court. After the issuance of the writ, Umbro instituted a garnishment proceeding to force the judicial sale of the Judgment Debtor's remaining domain names. In response, NSI filed an answer denying that it held any "money or garnishable property of the Judgment Debtor." As noted above, this action followed.

## II. *Findings of Fact and Conclusions of Law*

The issue in this case is whether the domain names registered by the Judgment Debtor with NSI are the kind of property that is subject to garnishment. The Supreme Court of Virginia has succinctly set forth the parameters of a garnishment action in the case of *Lynch v. Johnson,* 196 Va. 516, 520 (1954):

Garnishment is a proceeding which exists only by virtue of statutory enactment. Under our statutes, Va. Code Ann., § 8.01-511, *et seq.,* garnishment is the process by which a judgment creditor enforces the lien of his execution against any debt or property due his judgment debtor in the hands of a third person, garnishee.

The word "garnishment" is derived from the Norman French word "garnir," meaning to warn. 38 C.J.S., *Garnishment,* § 1, p. 200. Thus, a summons of garnishment under our statutes is a warning to the garnishee not to pay the money or deliver the property of the judgment

debtor in his hands, upon penalty that if he does he may subject himself to personal judgment. The proceeding of garnishment is in many respects similar to attachment by levy, but as indicated, differs in at least one particular, that is, the creditor "does not acquire a clear and full lien upon the specific property in the garnishee's possession, but only such a lien as gives him the right to hold the garnishee personally liable for it or its value." *Bickle v. Chrisman's Adm'x*, 76 Va. 678, 691, 692 (1882).

If it appear upon proof or upon confession of the garnishee that he owes the judgment debtor any debt or property, the court "may give judgment against him for any amount found due the execution debtor and order him to deliver any estate for which there is such liability, or pay the value of such estate to any officer whom it may designate." Code § 8-444 repealed. Replaced by Va. Code Ann. § 8.01-516.1. However, the garnishee, being a mere stakeholder or custodian of such debt or property, may avoid all personal liability by surrendering to the court for its proper disposition any amount of money or any specific property due the judgment debtor. The court cannot therefore enter any order or judgment against the garnishee unless he is found either to be indebted to the judgment debtor or to have possession of property of such debtor for which debt or property the judgment debtor himself could maintain an action at law. [Citations omitted.]

196 Va. at 520-21. Va. Code Ann. § 8.01-501 clearly states that a writ of fieri facias is a lien on all the intangible property of the judgment debtor. *Boisseau v. Bass*, 100 Va. 207, 209 (1902) (statute covers "every species of personal estate or interest"); *Evans v. Greenhow*, 56 Va. (15 Gratt.) 153 (1859); Virginia CLE, *Debt Collection for Virginia Lawyers - A Systematic Approach* at § 7.201 (1995). The lien, however, only attaches "to the extent that the judgment debtor has a possessory interest in the intangible property subject to the writ." *International Fidelity Ins. v. Ashland Lumber*, 250 Va. 507, 511 (1995).

The more precise issue in this case then is does the Judgment Debtor have a possessory interest in the domain names it registered with NSI? For the reasons set forth below, I find that it does.

The Domain Name Registration Agreement (Exhibit 1 to David M. Graves' affidavit, hereinafter the "Registration Agreement") provides among other things that the registration of a domain name "does not confer immunity from objection to either the registration or use of the domain name." The

Registration Agreement also obligates the registrant to comply with NSI's dispute policy (Exhibit 2 to David M. Graves' affidavit, hereinafter the "Dispute Policy"). The Dispute Policy gives NSI the right on thirty days' notice to "revoke, suspend, transfer, or otherwise modify a domain name registration." Dispute Policy, § 7. In the event of a trademark litigation, NSI may deposit control of the domain name into the registry of the court. This was done in *Umbro v. 3263851 Canada, Inc., et al.* (D. S.C., Dec. 30, 1997), *supra.* (Exhibit 3 to David M. Graves' affidavit, hereinafter the "Declaration"). In the Declaration, NSI stated that it "hereby deposits to the Court complete control and authority regarding the disposition of the registration and use of the umbro.com domain name." Declaration ¶ 5. The Dispute Policy also provides that NSI "will abide by those provisions of temporary or final court orders, or arbitration awards directing the disposition of the domain name, *without* being named as a party to the civil action." Dispute Policy § 10(c). However, once a registrant has paid the required fee, it is entitled to use the domain name to identify its site on the Internet, subject to the requirements of the Registration Agreement.

NSI argues that a writ of fieri facias cannot extend to domain names because the contract rights set forth in the Registration Agreement are dependent on unperformed conditions. These conditions include NSI's rights to indemnification and the registrant's continuing obligation to maintain an accurate registration record. This argument fails on several grounds. First, in the Dispute Policy, NSI undertakes to abide by any court order. Such orders have included mandatory injunctions that a registrant "take all actions necessary to transfer" a disputed domain name to a third party. *Panavision Int'l v. Toeppen,* 945 F. Supp. 1296, 1306 (C.D. Cal. 1996). Thus, in the Dispute Policy, NSI has agreed to subject itself to the very conditions it argues here would be unfair and contractually inappropriate. Second, property can be garnished that may be subject to other liens that affect the value of the property. Any bidder would have to discount its bid by factoring in the impact of a lien on the value of the property. Here a domain name is subject to the Registration Agreement and the Dispute Policy, but those contract provisions do not of themselves destroy a domain name as a subject of garnishment. Nor do those contract obligations render a registrant's rights "conditional" or so uncertain that the rights cannot be garnished. There is no unperformed condition under the Registration Agreement that could prevent a registrant from the full use of the domain name registration. The fact that the registration is subject to various conditions subsequent are not the kind of conditions that

the Court dealt with in *Tipco Homes, Inc. v. Sutton Woods, Inc.*, 9 Va. Cir. 95 (Fairfax County, 1987).

NSI next argues that the contract right to the performance of a service is not garnishable because among other things it would force NSI "to perform services for those with whom it may not desire to do business." This assertion is entitled to little weight, as in the short time of its existence, NSI has registered some 3.5 million domain names (Hearing Transcript, December 18, 1998, at 10), and registration applications are made by e-mail without human intervention in 90% of registration transactions. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 953 (C.D. Cal. 1997). Moreover, as Umbro points out in its reply brief, NSI did not balk at registering the domain names in question to the Judgment Creditor, a Judgment Creditor who certainly appears to be a pornographer. In fact, NSI does not vet its registrants nor does it monitor how its registrants use the domain names they register, and NSI has avoided liability for trademark infringement because of this passive role in the registration process. See, e.g., *Lockheed Martin Corp.*, 985 F. Supp. at 964-68.

In parts II, III, and IV of its opposition, NSI makes what can be collectively treated as its "intellectual property" arguments. There can be little question that domain names are a form of intellectual property. Domain names can receive trademark protection from the Patent Office. See Hamilton, *Trademarks on the Internet, supra,* note 3. The fact that this form of intellectual property results from a service that NSI provides does not (as NSI argues) preclude the property from garnishment any more than the service provided by the Patent Office in issuing a patent immunizes patents from garnishment. *McClaskey v. Harbison-Walker Ref. Co.*, 138 F.2d 493 (3d Cir. 1943); see Cherie L. Lieurance, *Judgment Creditors' Access to Intellectual Property Rights - Is Simple Execution in Sight?*, 7 Whittier L. Rev. 375 (1985). Nor can NSI prevail when it argues that because domain names do not have a readily ascertainable value, they cannot be the subject of garnishment. The writ of fi. fa. extends to all manner of property. The cases cited by Umbro demonstrate that there is indeed a market of domain names, and domain names have substantial value. *Intermatic, Inc.*, 947 F. Supp. 1227 (N.D. Ill. 1996); *Panavision Int'l, L.P.*, 945 F. Supp. 1296 (C.D. Cal. 1996). Since Virginia's fi. fa. and garnishment procedures provide that a garnishee may be ordered to deliver a judgment debtor's property for "proper disposition," *Lynch*, 196 Va. at 520; Va. Code Ann. § 8.01-516, it appears that domain names can be subjected to garnishment. Until Umbro's effort, domain names apparently have

not been subjected to garnishment, but that is no reason to conclude that this new form of intellectual property is therefore immune.

> The problem of shaping the new to the old, of reconciling the dual demands of stability and change, is surely congenial to legally trained minds. Just as our profession combines the theoretical and practical so also it furnishes insights into the perennial push of new demands pressing upon older interests. "History," to use Paul Freund's arresting phrase, "is itself a tension between heritage and heresy which law in its groping way seeks to mediate."

Hardy C. Dillard, *Writings and Speeches* 41 (Daniel J. Meador, ed., 1995). There is no reason apparent to this Court why a judgment creditor should be precluded from satisfying a valid judgment just because his debtor has a possessory interest in intangible intellectual property resulting from technology of recent vintage.

Mr. Roblyer will kindly prepare a draft order requiring NSI to deliver the domain names into the registry of the Court, whereupon they will be sold by the sheriff to the highest bidder.