**CSC BRANDS LP, a Delaware limited partnership, et al., Plaintiff,**

v.

**HERDEZ CORP., a Delaware corporation, et al., Defendants.**

**No. S–01CV1504.**

United States District Court, E.D. California.

Dec. 20, 2001.

Benjamin Lee Webster, Pillsbury, Winthrop, LLP, Sacramento, CA, Ira J. Levy, Lisa M. Pollard, Darby and Darby, New York City, for Plaintiff.

Michael Eric Chase, Boutin, Dentino, Gibson, Di Giusto, Hodell and West, Sacramento, CA, Gregory C. Golla, Allen Hinderaker, Merchant and Gould, Minneapolis, MN, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs CSC Brands LP and Campbell Soup Company (referred to collectively as "Plaintiffs") bring this action against defendants Herdez Corporation ("Herdez") and Hormel Foods Corporation ("Hormel") (referred to collectively as "Defendants") for trademark infringement, false designation of origin, and trademark dilution under the Trademark Act of 1946, codified and amended at 15 U.S.C. §§ 1051, *et seq.*, and for trademark infringement and unfair competition under the statutory and common law of California. This matter is before the court on Plaintiffs' motion for preliminary injunction. Plaintiffs allege that Defendants' marks illegally infringe upon and dilute Plaintiffs' own V8 marks. Plaintiffs seek an order from the court preliminarily enjoining Defendants from all further use of the marks Verduras 8, Verduras 8 Picante–Limon and Frutas 8, and the trade dress associated with them, in connection with any food or beverage business in the United States. For the reasons set forth below, Plaintiffs' motion is granted.

## BACKGROUND

The Plaintiffs manufacture and distribute a wide variety of food products, including certain blended vegetable juice beverage products under the V8 brand, which is the subject of the instant litigation. V8 is a blend of eight vegetable juices while V8 Splash is a blend of fruit juices and carrot juice. The Plaintiffs own several federal trademark registrations in connection with its V8 products. *See* Pls.' Mem. of P. & A.

in Supp. of Mot. at 5 and Saunders Decl. at Ex. A. Since 1937, Plaintiffs and their predecessors have sold a blended vegetable juice beverage under the V8 mark. The packaging associated with V8 brand juices has incorporated a number of elements, including (1) a "drop-shadow" typeface depicting the mark in green and black set against a mostly white background; (2) the contrasting use of red; (3) the prominent and central placement of the letter "V" beside the numeral "8"; and a graphical depiction of vegetables framing at least three sides of the mark. *See* Conway Decl. at Ex. A and C for graphical depictions of the V8 products. V8 products are marketed through all customary food and beverage channels, including vending machines, convenience stores, and major retailers.

In the spring of 1993, Plaintiffs sent a "cease and desist" letter to an affiliate of Herdez after Plaintiffs learned that this Herdez affiliate intended to enter the U.S. market with a blend of eight vegetable juices under the brand name "Verduras 8,"[1] which Plaintiffs believed was confusingly similar to its own V8 marks. *See* Saunders Decl. at Ex. C (for depiction of Verduras 8 product which Herdez tried to market in 1993) and Ex. D (cease-and-desist letter). The Herdez affiliate did not market the product after receiving Plaintiffs' letter. *See* Pls.' Mem. of P. & A. in Supp. of Mot. at 6.

In May 1994, Herdez attempted to register with the U.S. Patent and Trademark Office ("PTO") a trademark including the words "Verduras 8" and a "vegetable design" in connection with a vegetable juice product. *See* Saunders Decl. at Ex. E for the label that was the subject of Herdez's trademark application. Plaintiffs filed a letter of protest to Herdez's application, which the U.S. Trademark Office Examin-

---

1. "Verduras" is the Spanish language translation for the word for "vegetable."

er declared moot because it had already rejected Herdez's application. *See* Pls.' Mem. of P. & A. in Supp. of Mot. at 6–7; *and* Saunders Decl. at Ex. F (Plaintiffs' letter of protest to the PTO), Ex. G (PTO's refusal of Herdez's application as being to confusingly similar to V8), and Ex. H (letter from PTO to Plaintiffs stating that Plaintiffs' protest letter was moot).

Defendants began marketing Verduras 8, Verduras 8 Picante–Limon (a blend of eight vegetable juices and lime), and Frutas 8 (a blend of fruit juices) in the United States in early 2001. Herdez has been marketing Mexican food products in the United States since 1996. Herdez products have been sold in Mexico for over 86 years and, according to Defendants, it is a well-known Mexican brand. *See* Defs.' Mem. in Opp'n at 9. Defendants intend that Herdez products be marketed to the Hispanic consumer, in particular Mexican–Americans, as well as consumers who want authentic Mexican food.

Defendants market their Verduras 8 and Frutas 8 products through distribution channels that are similar to, if not the same as, distribution channels used by the Plaintiffs, including vending distributors and grocery retailers. Defendants intend their products to be placed in the ethnic or Mexican foods product aisle or section of retail stores and the price for their products is usually higher than the price charged for Plaintiffs' products. *See* Defs.' Mem. in Opp'n at 11. The labels of Defendants' products sold in Mexico are not the same as the labels of Defendants' products sold in the United States. *See id.* at 12. *See* Durren Decl. at Ex. B, C, and D for labels used by Defendants for products sold in Mexico and Ex. H for labels used by Defendants for products sold in the United States.

## STANDARD

■ A plaintiff is entitled to a preliminary injunction in a trademark case when she demonstrates either (1) probable success on the merits and the possibility of irreparable injury[2] or (2) the existence of serious questions going to the merits and the balance of hardships tips sharply in plaintiff's favor. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204–1205 (9th Cir.2000).

## ANALYSIS

### 1. Trademark Infringement

■ In order to prevail on a motion for preliminary injunction in a trademark infringement case under federal law, the plaintiff must establish that she is likely to be able to show a "likelihood of confusion." *See id.* at 1205.[3] This involves a determination of whether "the similarity of the marks is likely to confuse customers about the source of the products." *Id.* (quoting *Official Airline Guides v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993)). The Ninth Circuit has developed eight factors (the so-called *Sleekcraft* factors) to guide the determination of likelihood of confusion: (1)

---

**2.** The Ninth Circuit has held that articulating this prong as a bifurcated one is somewhat misleading since in a trademark infringement claim, irreparable injury may be presumed from a showing of likelihood of success on the merits. "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir.2000).

**3.** Likelihood of confusion is also the test for trademark infringement and unfair competition under California common and statutory law. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). Therefore, the inquiry is the same for Plaintiffs federal trademark infringement claims and its state law trademark infringement and unfair competition claims.

the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channels used; (4) the strength of Plaintiffs' mark; (5) Defendants' intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by the purchasers. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). This eight-factor test is "pliant," with some factors being more important than others, and the relative importance of each factor being case-specific. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.* 174 F.3d 1036, 1054 (9th Cir.1999).

### A. Similarity of the Marks

This factor has always been considered a critical question in the likelihood of confusion analysis. This factor, along with the second and third factors (relatedness of the services and the use of a common marketing channel), constitutes part of the "controlling troika in the *Sleekcraft* analysis." *GoTo.com*, 202 F.3d at 1205. *See also Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir.1998). The marks must be considered in their entirety and as they appear in the marketplace. *See GoTo.com*, 202 F.3d at 1206. Similarity is adjudged in terms of appearance, sound, and meaning and similarities are weighed more heavily than differences. *See id.* A review of the labels of both Plaintiffs' and Defendants' products shows that this factor is in Plaintiffs' favor.

Defendants point out that there are differences in the labels. First, while Plaintiffs use black with green shadowing for their "V8" mark, "Verduras 8" is green with yellow outlining and "Frutas 8" is green with white outlining. Second, the display of vegetables is different between the products, with the tomato taking a more prominent role in V8's trade dress. Thirdly, and most significantly to the Defendants, the Defendants' labels prominently display "Herdez" as a brand name in block letters and red coloring. Defendants argue that its prominent use of its well-known Mexican brand name, along with the tag line in Spanish "Con toda Confianza . . . es" distinguish the Verduras 8 and Frutas 8 products from the V8 products.

However, strong trade dress similarities exist. The coloring used on Defendants' products is similar to the coloring used on Plaintiffs' products. Certainly the "V" and "Verduras" reflect vegetables as the source of the juices. Both products place the numeral "8" in a central location (which presumably refers to eight juices) and both products use a graphical depiction of vegetables or fruits to frame the three sides of the numeral "8."

### B. Relatedness of the Services and Marketing Channels Used

The products at issue are substantially similar. Verduras 8 and V8 are eight blended vegetable juices. Frutas 8 and V8 Splash are both blended fruit juice products.[4]

Plaintiffs and Defendants are also using identical channels to market their products since both sell to consumers at retail through distributors and vending channels. Both sell to supermarket chains including Ralph's, Vons, Safeway, Albertson's, A & P, Winn–Dixie, Food Lion, Hi Vee, and Wal–Mart.

---

**4.** The fact that V8 Splash contains carrot juice while Frutas 8 does not is a negligible difference.

Defendants contend that the products are not related because Defendants intend to market their product to Hispanic consumers, particularly Mexican Americans, and those who desire authentic Mexican food. Defendants further argue that the Verduras 8 and Frutas 8 products are to be located in the ethnic or Mexican section of the grocery store while Plaintiffs' products are located in the juice aisle and this difference in product placement reflects the difference between the consumers for the two sets of products.

It is unclear that the consumer base for Verduras 8 and Frutas 8 products can be so easily separated from the consumer base for V8 products. First, Verduras 8 and Frutas 8 products are being sold to supermarket chain stores, such as Ralph's and Albertson's, which carry products across ethnic lines. Lykken Dep. at 95–96, 99–100. Second, even if Defendants intend their products to be specifically segregated into an ethnic or Mexican foods section, retailers are not necessarily bound by the Defendants' wishes. In October or November 2001, a Wal–Mart store in Bentonville, Arkansas placed Verduras 8 and Frutas 8 products in the same aisle as other juice products, such as Gatorade. *See* Conway Dep. at 144–47. V8 products were also sold in the store. *See id.* at 146–47. It should be noted that many non-Hispanic customers buy products that are not specifically targeted to them and many Hispanic customers freely purchase products not specifically targeted to them. Indeed, almost two-thirds (64.8%) of purchasers of Herdez products are "white." *See* Levy Reply Decl. at Ex. H. Since there is no evidence of a clear dividing line between the consumer base for Verduras 8 and Frutas 8 products as opposed to V8

products, these two factors weigh in favor of Plaintiffs.

### C. Strength of Plaintiffs' Mark

Defendants do not dispute that "V8" is a very well-known and strong mark. However, Defendants do argue that "V8 Splash" is a less strong mark because its brand awareness on an unaided basis is less than ten percent and that "splash" is a descriptive term as applied to beverages. *See* Defs.' Mem. in Opp'n at 19. However, as Plaintiffs point out, "splash" is not to be considered in isolation and its combination with the well-known "V8" mark make "V8 Splash" a strong mark deserving of broad protection.

At oral argument, Defendants' counsel argued that "V8" is a descriptive term such as "orange juice" or "grapefruit juice." Defendants' counsel asserted that "V8" has become simply a descriptive term for vegetable juice. The court disagrees. The evidence indicates that "V8" is a very strong mark and is not descriptive. *See* Saunders Decl. at Ex. A for patent and trademark registrations on "V8" held by Plaintiffs. It is precisely the strength of V8's mark that enabled Plaintiffs to make a significant entry into the blended fruit juice market with "V8 Splash." [5] Such an obviously strong mark deserves broad protection.

Defendants' counsel also argued that its own use of "Verduras 8" was descriptive rather than used as a trademark. Referring to the "who are *you*/what are *you*" test developed in *Filipino Yellow Pages v. Asian Journal Publications,* 198 F.3d 1143, 1147 (9th Cir.1999), Defendants' counsel stated that Verduras 8 was descriptive because it provided consumers

---

**5.** Since 1996, Plaintiffs have spent in excess of $55 million in advertising and promoting V8 vegetable juice products with sales over this period exceeding $1.15 billion. Since 1997, advertising and promotional expenditures for V8 Splash have exceeded $100 million and sales have exceeded $600 million.

with information as to what the product was rather than its maker or origin.

The court finds that "Verduras 8" is not being used as a descriptive term but, rather, as a trademark. If "Verduras 8" were being used as a descriptor, it would be unnecessary to boldly print the phrase "blend of vegetable juices" on the opposite side of the can. In addition, the use of coloring and lettering and its central placement serves to highlight "Verduras 8" and set it apart from other descriptive terms on the product such as "Jugo de."

### D. Defendants' Intent in Selecting the Mark

Plaintiffs argue that the Defendants have exhibited a bad faith intent to cause confusion by marketing products which they knew would be confusingly similar to the V8 products. Plaintiffs contend that Defendants have known since the early 1990s that the PTO ruled that an earlier, only slightly different version of the Defendants' mark and label would likely cause confusion with Plaintiffs' V8 marks. Plaintiffs further argue that Defendants knew that Plaintiffs objected to Defendants' use of the Verduras 8 mark and label since it received a "cease and desist" letter in 1993.

Defendants argue that their intent was to capitalize on the brand awareness among Mexican Americans for "Herdez." Defendants argue that they did not use the label design used for Mexican products in marketing their United States products. Rather, Defendants contend that they modified the Mexican label design in order to highlight the "Herdez" brand name.

An examination of the Defendants' labels used in Mexico (see Durren Decl. at Ex. B, C, and D) shows that these labels look even more similar to the V8 products than the labels Defendants use on U.S. products. The Mexican labels used by the Defendants show a larger "8" in black coloring with a yellow outline and the letter "V" at the beginning of "Verduras" is also enlarged. See Durren Decl. at Ex. B and C. This use of an enlarged "V" and a black colored "8" is very similar to the black enlarged "V8" used by Plaintiffs.

The trade dress of Verduras 8 products sold in Mexico reveals the Defendants' strategy and is relevant to the Plaintiffs' contention that Verduras 8 products appear confusingly similar to V8. Moreover, as Plaintiffs pointed out in oral argument, Defendants' own internal documents referred to their Verduras 8 product as "V8." Levy Reply Decl. at Ex. Q. Such evidence, when coupled with the 1993 contesting of the marketing of Verduras 8 and the PTO's rejection of Defendants' trademark, underscores the intent to cause confusion.[6]

### E. Evidence of Actual Confusion

Plaintiffs offer the following as evidence of actual confusion: (1) a study conducted by Dr. Henry Ostberg commissioned by Plaintiffs designed to determine the likelihood of confusion between Defendants' Verduras 8 vegetable juice and any other vegetable juice (see Webster Decl. at Ex. A); (2) sales literature of a food products distributor describing Defendants' products as "Herdez V–8 Fruit Juice," "Herdez V8 Spicy/Picante Limon" and "Herdez V–8 Juice" (see Conway Decl. at Ex. E) and (3)

---

**6.** Defendants could have modified their rejected Mexican label in an infinite number of ways but specifically decided to retain the prominent and central placement of "Verduras" (signifying vegetable) and "8" surrounded by graphics of vegetables. While one might conclude the elevation of "Herdez" is an attempt to differentiate the Verduras 8 product from V8, Defendants' decision to retain the dominant similarities with the V8 label belies a different intent.

an e-mail from a consumer to Plaintiffs (*see* Levy Reply Decl. at Ex. C).

The Ostberg study was drawn from shopping-mall intercept interviews with 235 people in ten different shopping malls. Respondents were exposed to the Herdez Verduras 8 product, a bottle of Canada dry ginger ale, and a can of Shasta cola. According to Plaintiffs, the Ostberg study found that 15% of respondents were confused about the relationship between Defendants' Verduras 8 and Campbell's V8 products.

Defendants argue that the Ostberg study is fatally flawed because it (1) did not sample from the relevant universe of Mexican Americans since those who did not speak English were excluded from the study; and (2) did not filter out for "noise" or guessing on the part of respondents by having a control group sub-sample and open-ended follow up questions. Defendants contend that their own survey conducted by Dr. Alex Simonson, which was based on the Ostberg survey but corrected for flaws in its design, showed that only 2.9–4% of the respondents could be considered confused. *See* Hinderaker Decl. at Ex. C for Simonson study. Plaintiffs dispute Defendants' criticisms of the Ostberg study by saying that it did sample the relevant population and it was methodologically sound.

Defendants' criticisms of Plaintiffs' survey may have merit. However, it is unnecessary to engage in an in-depth analysis of whether the Ostberg study is less reliable than the Simonson study. Even if the Ostberg study is entirely discounted, the balance of the evidence provided by Plaintiffs demonstrates that actual confusion exists.

The sales literature of Five–Star, a food distributor, lists Defendants products as "Herdez V–8 Fruit Juice," "Herdez V8 Spicy/Picante Limon" and "Herdez V–8 Juice" *See* Conway Decl. at Ex. E. The court agrees with Plaintiffs that this is particularly significant in light of the fact that Five–Star is a professional food distributor and a member of the trade and would likely be less at risk to be confused.

Plaintiffs have also produced an email written by a consumer to Campbell which reads:

> *I was wondering if you are affiliated with a product called "HERDEZ VER-DURAS 8", a vegetable drink made in Mexico.* It is being sold in a vending machine where I work, and the button on the vending machine advertises it as V8. I feel is its [sic] deceptive advertising, as you do not get V8, but rather this (different tasting) substitute from Mexico. The vending machines are owned and operated by Coca Cola. Thanx [sic]

Levy Reply Decl. Ex. C. (emphasis added). This email demonstrates confusion both by the consumer who thinks Plaintiffs may be "affiliated ... Verduras 8" *and* the individual who stocked Verduras 8 in the V8 vending machine slot. In light of the fact that Defendants have been marketing Verduras 8 and Frutas 8 products for less than one year, these examples of actual confusion are particularly compelling.

**F. Likelihood of Expansion into Other Markets**

While Defendants have stated that it is their intent to market their products to Hispanic consumers only, Defendants have no control over whether their products will find broader appeal. Given that Defendants' products have been placed with other non-ethnic juice products in one Wal–Mart store, as mentioned above, there is a significant likelihood that Verduras 8 and Frutas 8 could expand into the consumer base of V8, if they have not done so already.

### G. Degree of Care Likely to be Exercised by the Purchasers

Given that these beverages are sold in supermarkets and are low cost, the degree of care likely to be exercised by purchasers is minimal. "[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir.1999).

In sum, looking at the factors together, particularly the evidence of actual confusion offered by the Plaintiffs, the similarity between the products' marks, the types of products offered and the marketing channels, Plaintiffs have demonstrated a "likelihood of confusion" and, thus, a likelihood of success on the merits, from which irreparable injury may be presumed. Plaintiffs are, therefore, entitled to a preliminary injunction.

### 2. Trademark Dilution

■ Unlike the infringement and unfair competition claims, Plaintiffs need not show competition between the parties and a likelihood of confusion in order to be entitled to relief under their trademark dilution claims.[7] Instead, Plaintiffs must establish that (1) its mark is famous; (2) Defendants are making commercial use of the mark in commerce; (3) Defendants' use began after the Plaintiffs' mark became famous; and (4) Defendants' use presents a likelihood of dilution of the distinctive value of the mark. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir.1999). Dilution is defined as the "lessening of the capacity of the fa-

mous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127. Traditionally, dilution is found where the defendant's conduct either tarnishes or blurs the mark. "When a famous mark is linked to products of lesser quality or portrayed in an unwholesome manner, the mark is tarnished." *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1033 n. 16 (C.D.Cal.1998). " 'Blurring involves a 'whittling away' of the selling power and value of a trademark by unauthorized use of the mark.' " *Id.* (citations omitted).

■ Plaintiffs claim that Defendants' use of the "Verduras 8" and "Frutas 8" marks is lessening the ability of the "V8" marks to serve to identify Campbell as the single source of V8 products, as evidenced by the actual confusion among distributors such as Five Star and consumers. Defendants argue that their use of "Verduras 8" and "Frutas 8" are as descriptors of the nature of their products and not as trademarks. The Defendants argue further that the disputed marks are not substantially similar.

Given the evidence of actual confusion provided by the Plaintiffs, as discussed above, Plaintiffs have demonstrated that Defendants' use of "Verduras 8" and "Frutas 8" lessens the ability of Plaintiffs' "V8" marks to identify Plaintiffs as the single source for the V8 products. Therefore, Plaintiffs are entitled to a preliminary injunction on their trademark dilution claim.

---

7. As with the state law trademark infringement and unfair competition claims, the inquiry for dilution under California statutory law is substantially the same as the inquiry for dilution under the federal Lanham Trademark Act. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir.1999). Therefore, both the California and federal law claims for trademark dilution will be treated as analytically identical.

### 3. Bond for Preliminary Injunction

Federal Rule of Civil Procedure 65(c) requires the imposition of a bond in an amount sufficient to cover the damages caused by an erroneous issuance of a preliminary injunction. Defendants estimate that a bond of at least $700,000 is necessary. This estimate is based on estimated costs associated with withdrawing the products, costs incurred for already paid slotting fees, and lost profits on withdrawn products. *See* Durren Decl. at 9–10. Defendants, however, offer no financial analysis other than Mr. Durren's conclusions. Plaintiffs argue that there is no documentary evidence to support Defendants' contention and that a minimal bond is warranted. The court orders a bond of $100,00.00.

### CONCLUSION

An examination of the *Sleekcraft* factors demonstrates that Plaintiffs have shown a "likelihood of confusion" and are entitled to a preliminary injunction on their trademark infringement claims. Plaintiffs are also entitled to a preliminary injunction on their trademark dilution claims. Plaintiffs' motion for preliminary injunction is GRANTED.

It is hereby ordered that

1. Pending final determination of this action at trial or further order of the court, Defendants, their officers, agents, servants, employees and those persons in active concert or participating with them, including without limit their distributors, are hereby enjoined from:

a. Manufacturing, marketing, distributing, selling, offering for sale, promoting, or advertising any beverage or related product under or bearing the names Verduras 8 or Frutas 8 or any trademark confusingly similar to or dilutive of any of Plaintiffs' V8 Marks, as defined in the complaint; and

b. Manufacturing, marketing, distributing, selling, offering for sale, promoting, or advertising any beverage or related product under or bearing the trade dress depicted in Exhibit C to the complaint, or any other trade dress confusingly similar to or dilutive of Plaintiffs' V8 Trade Tress, as defined in the complaint.

2. Defendants shall contact their customers, sales distributors, and sales agents, requesting that they immediately cease the sale and advertising of all products subject to this order; and

3. Defendants shall file with the court and serve upon Plaintiffs within thirty days after the entry of this order, a written report setting forth in detail the manner and form in which Defendants have complied with the requirements of this order; and

4. The issuance of the preliminary injunction shall be conditioned upon the giving of a security by Plaintiffs by 12 p.m. on December 27, 2001, in the sum of $100,000.00 for payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined.

IT IS SO ORDERED.